UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Antonio G. Amador, Jr.,                           Civil No. 16-CV-600 (SRN/HB)

                                                           MEMORANDUM OPINION
                                                              AND ORDER

        Plaintiff,

v.

U.S. Bank National Association,

        Defendant.

_____

Matthew J. Schaap and Robert B. Bauer, Dougherty, Molenda, Solfest, Hills & Bauer P.A., 14985 Glazier Avenue, Suite 525, Apple Valley, MN 55124, for Plaintiff.

David A. Schooler and Ellen A. Brinkman, Briggs & Morgan, PA, 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, for Defendant.

_____

SUSAN RICHARD NELSON, United States District Court Judge

    Before the Court is the Objection/Appeal [Doc. No. 35] filed by Plaintiff Antonio G. Amador, Jr. to the magistrate judge's order of November 29, 2016, ("the Order"), as reflected in the Court's minutes [Doc. No. 33] and the hearing transcript [Doc. No. 37]. Plaintiff objects to a portion of the ruling on his Motion to Modify the Scheduling Order and to Compel Discovery [Doc. No. 22] that Magistrate Judge Hildy Bowbeer denied in

part.[1] Specifically, Amador objects to paragraphs 3 and 5 of the Order, consisting of Magistrate Judge Bowbeer's ruling concerning Plaintiff's request for all customer advice debit ("CAD") services/tickets not previously produced by Defendant U.S. Bank and her denial of Plaintiff's request for attorneys' fees or expenses. (Pl.'s Obj. at 1.) Based on the Court's review of the parties' arguments and the record, the Court grants in part and denies in part Plaintiff's Objection/Appeal.

**I.      BACKGROUND**

This is a race discrimination action brought pursuant to the Minnesota Human Rights Act, Minn. Stat. § 363A.01, and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e. (Compl. ¶ 5 [Doc. No. 1-1].) Plaintiff was employed by U.S. Bank as a branch bank manager from September 2011 to April 2015. (Id. ¶¶ 7; 24; 38 .) Amador, who is Hispanic, alleges that he was terminated by U.S. Bank based on unlawful racial discrimination. (Id. ¶ 41.) He alleges that his superiors subjected him to treatment that was different than that of non-Hispanic persons. (Id. ¶¶ 13-17.) Defendant, however, contends that it terminated Amador's employment for two primary reasons: (1) the improper use of a company credit card; and (2) compliance concerns related to Amador's use of CAD slips. (Decl. of Christine Hobrough ("Hobrough Decl.") ¶ 5 [Doc. No. 30].)

Plaintiff maintains that he occasionally provided CAD service to known

---

[1] Other portions of Plaintiff's motion, concerning different discovery, were granted in part or denied as moot.

customers, consistent with his training at U.S. Bank. (Aff. of Antonio Amador ("Amador Aff.") ¶¶ 6-7 [Doc. No. 24].) Through a CAD slip, a branch manager could transfer money from one account controlled by a good customer to another account, also controlled by the same customer, without the customer's signature. (Compl. ¶ 26.) Plaintiff alleges that when he was hired and trained by Defendant, he was trained to use the CAD service for particular customers. (Id.) As relevant here, Amador performed the service on behalf of "DK," the owner of a major restaurant in the Twin Cities, who maintained commercial and personal accounts with U.S. .Bank. (Id. ¶ 26; Def.'s Opp'n Mem. at 2, n.1 [Doc. No. 38].) Amador worked as a branch manager at U.S. Bank branches in the Midway of St. Paul and in Eagan. (Compl. ¶¶ 7; 9.) Although U.S. Bank denied Amador's request to bring DK's account with him when he transferred to the Eagan branch, (Hobrough Decl. ¶ 3), he nonetheless continued to respond to DK's email, text, or telephone requests to transfer money from his business account to his personal account. (Amador Dep. at 126-27, Ex. 4 to Decl. of David A. Schooler [Doc. No. 31-4].) Amador accomplished this through CAD slips. (Amador Aff. ¶¶ 10-11.)

Defendant argues that it discourages the use of CAD slips, because they are normally reserved for correcting teller errors. (Hobrough Decl. at ¶ 4.) Defendant contends that CAD slips create risk for the bank because if a customer later challenges the transfer, there is no signature by which the customer can validate the transfer, nor an electronic footprint. (Id.; Def.'s Opp'n Mem. at 3 [Doc. No. 38].)

In discovery, Plaintiff made the following document requests, pertinent to the instant dispute:

> REQUEST NO. 1: All documents consulted, referred to, or identified in your Answers to Interrogatories and your Responses to the Request for Admissions served contemporaneously herewith.
>
> REQUEST NO. 15: All documents or tangible material of any kind, including but not limited to all notes, memoranda, diaries, journals or other tangible evidence that concern or relate in any manner to the subject matter of the above-entitled lawsuit.
>
> REQUEST NO. 16: To the extent that you deny any of Plaintiff's Requests for Admissions served contemporaneously herewith, provide each and every document that you believe supports your denials.

(Pl.'s Doc. Prod. Req., Ex. 2 to Decl. of Matthew J. Schaap ("Schaap Decl.") [Doc. No. 25-2].)   Plaintiff also served the following requests for admissions, in pertinent part:

> REQUEST NO. 13: Admit that U.S. Bank transfers funds for some of its good clients, including paying a credit card from one of the client's U.S. Bank accounts or transferring money from the client's account to a family member's account, when requested by the client, through the branch manager's use of customer service debits to service the client's needs (the "Advice Debit Services").
>
> REQUEST NO. 14: Admit that U.S. Bank performed Advice Debit Services for the Client, as well as other clients, as a customer service benefit long before Plaintiff was hired by U.S. Bank.
>
> REQUEST NO. 15: Admit that U.S. Bank continues to perform Advice Debit Services for its top clients as a customer service benefit.
>
> REQUEST NO. 23: Admit that similar Advice Debit Services are performed by other branch managers and employees working for U.S. Bank.
>
> REQUEST NO. 24: Admit that U.S. Bank has not terminated similarly situated white branch managers for performing Advice Debit Services.

4

(Pl.'s Req. for Admissions, Ex. 3 to Schaap Decl. [Doc. No. 25-3].)

At some point during the discovery period, U.S. Bank produced 25 CAD slips used by Amador. (Pl.'s Obj. at 7.) Counsel for Defendant acknowledged at the hearing on the instant motion that, through neither side's fault, all of the depositions in the case occurred within a one-month period. (Tr. of 11/29/16 Hrng. at 23 .) It appears that the month in question was October 2016, as the discovery deadline was October 31, 2016. Following one of the depositions, Plaintiff's counsel emailed defense counsel on October 21, 2016, with the request to see Minnesota CADs that were not related to teller error, for a five-year period. (Email chain of 10/21/16, Ex. 10 to Schaap Decl. [Doc. No. 25-10].) Defendant declined to produce the CAD discovery involving branch managers other than Amador. (See Pl.'s Obj. at 7.) On October 31, 2016–the discovery deadline– Plaintiff moved to extend the scheduling order and to compel the production of certain discovery, including "[a]ll CAD slips from U.S. Bank's Minnesota branches for the five years preceding Plaintiff's motion, excluding CAD slips used to correct teller errors." (Pl.'s Mot. at 1 [Doc. No. 22].) Plaintiff also sought sanctions for Defendant's failure to comply with his discovery requests. (Id. at 2.)

At the hearing on Plaintiff's motion, counsel for U.S. Bank represented that his client did not consult any CAD slips in order to respond to Plaintiff's admission requests. (Tr. of 11/29/16 Hrg. at 34 [Doc. No. 37].) Instead, U.S. Bank produced the CAD slips for the DK accounts which contributed to Amador's termination. (Id.) Moreover, in a

declaration submitted in opposition to Plaintiff's motion, Christine Hobrough, U.S. Bank's Senior Vice President and Regional Market Manager, emphasized the burden that U.S. Bank would face if it were required to produce the requested discovery. Hobrough stated that U.S. Bank does not maintain a log system for CAD slips, (Hobrough Decl. ¶ 7), and CAD slips are not easily accessible:

> The only way to locate customer advice debits would be to review each customer's account, one transaction at a time. Notably, U.S. Bank has 3,122 branches across the United States and 135 branches in the Twin Cities. Each branches [sic] typically has between 2 and 20 tellers. Each teller processes approximately 200 to 500 transactions per day. Throughout the day, the paper transactions are bundled and brought to process centers located across the United States. U.S. Bank employees key in the information regarding each transaction. After the transaction is keyed into a U.S. Bank data system, the top copy of any transaction—including a customer advice debit—goes to an offsite storage facility where it is stored pursuant to our document retention policy. Those storage facilities are located at various places throughout the United States. It is not possible to isolate a customer advice debit in any of the U.S. Bank systems to locate electronic versions of the customer advice debits.

(Id. ¶ 6.)

Magistrate Judge Bowbeer denied Plaintiff's motion to compel regarding the CAD slips on the following bases: (1) the CAD slips were never specifically or formally requested in an interrogatory or request for production; (2) Defendant's counsel stated clearly and unequivocally that his client did not consult, refer to, or rely on those materials in responding to the requests for admission pertaining to customer advice debits, and that Defendant has produced all documents consulted, referred to, or relied on in preparing its responses to those requests for admission; (3) Document Request Nos. 15

and 16 were too broadly worded to fairly encompass the requested materials; and (4) it is not improper for a party to refuse to provide the factual basis for denials to requests for admission.  (Order at 1-2.)

## II. DISCUSSION

A district court's review of a magistrate judge's order on a nondispositive matter, such as the underlying motion, is "extremely deferential."  Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999); see also United States v. Raddatz, 447 U.S. 667, 673 (1980).  The Court will reverse such a ruling only if it is clearly erroneous or contrary to law.  See 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).

As to the scope of discovery, Federal Rule of Civil Procedure 26(b) provides in pertinent part:

> (1) Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  It is widely recognized that the rule is to be broadly construed, In re Milk Prod. Antitrust Litig., 84 F. Supp. 2d 1016, 1027 (D. Minn. 1997), and "is liberal in scope and interpretation."  Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992).  Discovery is not without its limits, however, and the party seeking the information must make a threshold showing of relevance.  Id.  In addition, Rule 26(b)(1)

also requires that the requested information be proportional to the needs of the case, giving due consideration to the importance of the information, issues of access, and the balance between the burden of production and expense and the benefit of the information.

Respectfully, the Court disagrees with the magistrate judge's blanket ruling to deny Plaintiff's motion to compel the CAD slips.  Her ruling focused primarily on whether Defendant consulted such documents in responding to requests for admission.  But even putting aside that basis for discovery, the request for CAD slips fell within the admittedly broad scope of Request No. 15.  Parties routinely issue broad discovery requests.  After the responding party lodges objections, it is incumbent upon both sides to meet and confer in an effort to find a middle ground. This is particularly critical where the narrowed request involves issues of high importance in the litigation, as is the case here.  Whether other U.S. Bank branch managers used CAD slips under the same or similar circumstances in which Amador used them for DK is of significant importance.  It is relevant both to Amador (evidence as to legitimacy of termination and pretext) <u>and</u> to U.S. Bank, since discovery of this information may support U.S. Bank's position that Plaintiff was not unlawfully terminated.  But to not balance the need for the information, the importance of the discovery, and Plaintiff's lack of access to it against the tremendous burden and expense to U.S. Bank was error.

The Court is mindful of the importance of the requested information, to which Amador has no access.  On the other hand, the Court appreciates U.S. Bank's concerns regarding the difficulty and cost of producing the discovery for a five-year period and for

all U.S. Bank branches in Minnesota.  Balancing these concerns, the Court grants Plaintiff's motion in part, subject to greater limitations for the discovery.  The parties shall meet and confer regarding a sampling protocol, limited to a sample of U.S. Bank branches in Minnesota for an agreed upon two-year period between 2011 and 2015, to locate CAD slips that are not teller error-related.  Within 60 days, after agreement on a sampling protocol, U.S. Bank shall conduct its search and produce any CAD slips that are responsive to these limitations, i.e., not related to teller error and generated in a Minnesota branch during the agreed upon two-year period.  To the extent that U.S. Bank is able to target its sample to the nearest storage facility and/or the storage facility or facilities at which the CAD slips were previously located, it may do so.

As to Plaintiff's appeal of Magistrate Judge Bowbeer's decision denying Amador's request for attorneys' fees for the cost of his motion to compel, it is denied. Granted, as Plaintiff observes, Rule 37(a)(5) provides that if the motion to compel is granted or if the requested discovery is provided after the motion was filed, the court must require the opposing party to pay the movant's reasonable expenses incurred in making the motion. Fed. R. Civ. P. 37(a)(5)(A).  However, the rule also prohibits an award of fees under certain circumstances, including circumstances that make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(iii).   Here, it appears that due to mutual circumstances involving scheduling and illnesses, for which no bad faith is alleged, much of the discovery occurred in the very final weeks of the discovery period.  Perhaps Plaintiff might have crafted a narrower request earlier in the discovery period and perhaps

Defendant might have made efforts to provide a representative sampling of the information.  Under these facts, the Court finds that an award of fees is not required.  The magistrate judge's ruling is therefore affirmed in this respect.

The Court recognizes that Defendant has moved for summary judgment, has filed its brief in support of the motion, and has noticed a February 24, 2017 hearing on the motion.  The parties are directed to meet and confer on a new briefing schedule in light of this additional discovery and advise the Court.  The hearing on Defendant's summary judgment motion will be rescheduled.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Plaintiff's Appeal/Objection [Doc. No. 35] is **GRANTED in part** and **DENIED in part**;

2. The Magistrate Judge's Order of November 29, 2016 [Doc. No. 33] is respectfully **REVERSED in part** and **AFFIRMED in part**, as set forth herein; and

3. Plaintiff's Motion to Modify the Scheduling Order and to Compel Discovery [Doc. No. 22] is **GRANTED in part** and **DENIED in part.**

Dated:   January 19, 2017

> s/Susan Richard Nelson
> SUSAN RICHARD NELSON
> United States District Court Judge